a

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| JAMARLON PIERRE #408823, Plaintiff | CIVIL DOCKET NO. 1:19-CV-01499 SEC P |
| VERSUS | JUDGE DRELL |
| DARRYL VANNOY, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed by *pro se* Petitioner Jamarlon Pierre ("Pierre"). Pierre is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary. Pierre challenges his conviction in the Tenth Judicial District Court.

Because Pierre is not entitled to habeas relief, his Petition should be DENIED and DISMISSED with prejudice.

## I.  Background

Pierre was convicted of attempted second-degree murder and armed robbery. *State v. Pierre*, 2014-1333 (La.App. 3 Cir. 5/6/15, 1); 165 So. 3d 365, *writ denied sub nom. State ex rel. Pierre v. State*, 2015-1149 (La. 5/13/16); 191 So. 3d 1054; *State v. Pierre*, 2014-1071 (La.App. 3 Cir. 5/6/15); 170 So. 3d 348, *writ denied sub nom. State ex rel. Pierre v. State*, 2015-1151 (La. 5/13/16); 191 So. 3d 1054. Pierre initially received concurrent 45-year sentences. *Id.* However, after being adjudicated a

habitual offender, Pierre was re-sentenced to life imprisonment. *Pierre,* 191 So. 3d at 368.

On appeal, Pierre claimed there was insufficient evidence to convict him. Pierre's convictions and habitual offender adjudication were affirmed. *Id.* However, because the trial court did not identify which of Pierre's sentences was being enhanced, the Louisiana Third Circuit Court of Appeal vacated the life sentence and remanded for resentencing, "with the trial court being instructed to clarify which sentence(s) is (are) being enhanced and for imposition of a separate sentence on the remaining conviction should only one sentence be enhanced." *Id.* at 370. Pierre was again sentenced to life imprisonment.

Pierre filed an application for post-conviction relief on April 27, 2017, claiming that he received ineffective assistance of counsel for failing to challenge "several jurors who possessed grave bias or potential for grave bias." ECF No. 1-2 at 15. The application was denied under *Strickland v. Washington*, 466 U.S. 668 (1984). ECF No. 1-2. The Louisiana Supreme Court also denied writs because Pierre failed to show ineffective assistance under *Strickland. See State v. Pierre*, 2018-1360 (La. 10/8/19, 1); 280 So.3d 152, 153.

In his § 2254 Petition, Pierre raises the claims of insufficient evidence and ineffective assistance of counsel in failing to challenge several jurors. ECF No. 1.

## II.    Law and Analysis

### A.    Rule 8(a) Resolution

The Court is able to resolve Pierre's § 2254 Petition without the necessity of an evidentiary hearing because there are no genuine issues of material fact relevant to Pierre's claims, and the state court records provide an adequate factual basis. *See Moya v. Estelle*, 696 F.2d 329, 332-33 (5th Cir. 1983); *Easter v. Estelle*, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

### B.    Standard of Review

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).  The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings or to substitute its own opinions for the determinations made by the trial judge. *See Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)).

Under § 2254 and the AEDPA, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

3

presented in the state court proceeding. *See Martin v. Cain*, 246 F.3d 471, 475-76 (5th Cir. 2001), *cert. den.*, 534 U.S. 885 (2001).

Therefore, § 2254(d) demands an initial inquiry into whether a prisoner's claim has been "adjudicated on the merits" in state court; if it has, the AEDPA's highly deferential standards apply. *See Davis*, 135 S. Ct. at 2198 (citing *Richter*, 562 U.S. at 103).

When a federal claim has been presented to a state court and the state court has summarily denied relief without a statement of reasons, it may be presumed that the state court adjudicated the claim on the merits, in the absence of any indication or state law procedural principles to the contrary. *Richter*, 562 U.S. at 99. A habeas court must determine what arguments or theories supported, or could have supported, the state court's decision, and then, whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See Richter*, 562 U.S. at 102. Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden must be met by showing there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within

4

the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. *See Martin*, 246 F.3d at 476; *see also Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007), *cert. den.*, 555 U.S. 827 (2008).

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. *See Martin*, 246 F.3d at 476. An unreasonable application is different from an incorrect one. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable. *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *see also Davis*, 135 S. Ct. at 2199 (citing *Fry v. Plier*, 551 U.S. 112, 119 (2007)).

C.    <u>Pierre cannot establish insufficient evidence.</u>

Pierre alleges there was insufficient evidence to convict him of attempted second-degree murder and armed robbery because "no state witness could identify this Petitioner as the shooter." ECF No. 1-5 at 4. He alleges that the witnesses were "drug dealers and felons who were testifying on behalf of the state for lesser time in prison." *Id.* Pierre claims that the evidence actually points to Witness Jermaine LaCaze as the perpetrator. *Id.* This claim was fully adjudicated on the merits in the Louisiana state courts.

5

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence. *Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998). When reviewing such claims, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The review remains the same whether the evidence is direct or circumstantial. *United States v. Richardson*, 848 F.2d 509, 511 (5th Cir. 1998). And where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference and may not be overturned on federal habeas review unless the decision was objectively unreasonable. *Cavazos v. Smith*, 565 U.S. 1, 3-4 (2011).

Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are within the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks*

*v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

The appellate court noted that "[t]he *Jackson* standard of review is legislatively embodied in La.Code Crim.P. art. 821 and 'does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder.'" *Pierre*, 170 So.3d at 351 (quoting *State v. Pigford*, 05–477, p. 6 (La. 2/22/06), 922 So.2d 517, 521).

The appellate court noted:

> In this case, Defendant was charged with second degree murder, which is defined as the killing of a person "[w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1(A)(1). Attempt is defined as:
>
> > Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27(A). Specific intent may be inferred from the circumstances surrounding the accused's actions. *State v. Thomas*, 10–269 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, *writ denied*, 10–2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, —— U.S. ——, 132 S.Ct. 196, 181 L.Ed.2d 102 (2011). Louisiana jurisprudence holds that pointing and firing a gun at a person indicates an intent to kill. *Id.*

Defendant was also charged with armed robbery, which is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A).

*Pierre*, 170 So.3d at 351.

In reviewing the testimony under the *Jackson* standard, the appellate court

recounted:

At trial, Mitchell testified that on the morning in question, she looked out of her living room window and saw three men in a black Nissan pull into her driveway. She testified that the men exited the vehicle and she "could see the one dude that I could identify" standing on the side of the car. Mitchell testified that since she did not recognize the men, she went to her bedroom where she looked out of another window and saw two of the men walking to her front door. She testified that after she heard a knock, the men entered her front door and proceeded to her bedroom wherein one of the men shot her. Mitchell testified that the shooter wore a ski mask which covered his face. She testified that following the shooting, the men asked for money. Mitchell testified that she told them that money was located in a nearby nightstand, which also contained a gun. She testified that she never saw the money nor the gun following the incident. Mitchell testified that she subsequently provided the police with an identification of the man standing beside the black Nissan. She testified that she picked Jermaine LaCaze from a photographic lineup, identifying him as the man standing by the Nissan.

Deputy Winfred McDowell, Jr., of the Natchitoches Parish Sheriff's Department, testified that he investigated the incident and that Mitchell stated that she was shot by the shorter of the two men who entered her house. He testified that a composite sketch was prepared of one of the men based upon a description Mitchell provided. McDowell testified that following dissemination of this composite sketch to the public, law enforcement received a tip that the sketch favored LaCaze. McDowell testified that based upon this information, a photograph

lineup was taken and presented to Mitchell which contained LaCaze's picture. He testified that Mitchell identified LaCaze as being one of the individuals involved in the incident.

LaCaze testified that on the morning in question, he was driving his grandmother's Nissan Sentra when he picked up Perry Willis and Defendant, who wanted to get codeine at Thomas's house. When they arrived at Mitchell's house, LaCaze testified that he went to the front door and knocked although nobody answered. He testified that Defendant and Willis subsequently exited the car and approached to the front door. LaCaze testified that Defendant "knocked the door in with his shoulder" and Defendant and Willis "both ran in with guns." He testified that Defendant was wearing a ski mask whereas Willis was not. LaCaze testified that as the two men were inside the house, he returned to the car and attempted to leave. He testified that as he backed out of the driveway, however, the other two men ran out of the house and jumped into the car when Willis put a gun to LaCaze's head for trying to leave them. LaCaze testified that they left Mitchell's house with a cell phone, methamphetamine, and money, although LaCaze never took any of the stolen money for himself. He testified that in order to evade police, he drove to Michael Phillips's property wherein Defendant got Willis to bury the guns in the woods on the side of Phillips's house. He testified that they parked the Nissan at Phillips's property and that Charles Kelly subsequently picked them up. LaCaze testified that although he never heard a gun shot at Mitchell's house, he knew that a gun had been fired as he smelled gunpower when the other two men re-entered the car following the home invasion. LaCaze testified that Defendant told him that he "had to shoot" Mitchell, and LaCaze heard Defendant tell Kelly that he "had shot the bitch."

LaCaze testified that after Kelly picked them up, they went to the mall where Defendant and Willis purchased presents and clothes. He testified that Kelly subsequently dropped him off at home. LaCaze testified that thereafter, he took his wife's car to Phillips's house and told Phillips that the Nissan had broken down and that he would retrieve it in a few days. LaCaze testified that he and Mario Jackson retrieved the car a few days later, taking it to Tootie Gay's house. He testified that at Gay's house, he removed the license plate, placed it into the trunk, left the car there, and went to Dallas where he remained until he was arrested on January 11, 2012.

LaCaze testified that he was charged as a principal to both armed robbery and aggravated burglary and that he revealed Defendant's and Willis's involvement five months following his arrest. LaCaze testified

that no promises were made for his testimony, explaining that he wanted it to be known that he did not know that Defendant and Willis were going to rob and shoot Mitchell. He further testified that he went with the police to Phillips's property where the guns were allegedly buried, but they could not be located.

Jackson and Phillips testified on behalf of the State. Their testimony corroborated LaCaze's testimony regarding parking the Nissan Sentra at Phillips's house, removing the car from Phillips's house, and parking it at Gay's house. Kelly, who was declared a hostile witness by the trial court, also testified on behalf of the State. His testimony corroborated LaCaze's testimony in that after receiving a telephone call from Defendant, he went to Phillips's house to pick up the men. Kelly testified that they subsequently proceeded to Bossier City where they spent the money, further corroborating LaCaze's testimony. Kelly testified that all three men had a gun, including LaCaze. Kelly admitted to making a statement to the police in July 2012, that Defendant had told him that he shot Mitchell.

McDowell testified that a black Nissan registered to LaCaze's grandmother was located at Gay's house and that LaCaze was arrested in January 2012. He further testified that based on the information received from LaCaze and Phillips, Willis and Defendant were also arrested.

The above testimony shows that Mitchell was shot following a home invasion and robbery. Although only Mitchell, Defendant, and Willis know what happened during the home invasion, LaCaze's testimony as to the occurrences following the home invasion was corroborated by the State's witnesses. In his brief, however, Defendant questions LaCaze's credibility given his prior felonies. As to a witness's credibility, " '[i]t is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review.'" *State v. F.B.A.*, 07–1526, pp. 1–2 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1009, *writ denied*, 08–1464 (La.3/27/09), 5 So.3d 138 (quoting *State v. Freeman*, 01–997, pp. 2–3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580).

In this case, the jury believed LaCaze's testimony despite the conflicting testimony as to whether he had a gun. In that regard, "[i]t is well-settled jurisprudence that the testimony of a single witness, absent internal contradictions or irreconcilable conflicts with physical evidence, is sufficient to support a conviction." *State v. Jeter*, 09–1004, p. 3 (La.App.

3 Cir. 4/7/10), 33 So.3d 1041, 1043. The conflicting testimony about whether LaCaze had a gun does not contradict evidence showing that Mitchell was shot and robbed following the home invasion.

*Pierre*, 170 So.3d at 351-53.

The appellate court clearly reviewed the essential elements of the crimes, and determined that the jury reasonably believed LaCaze's testimony. Moreover, it found that:

> [T]he above testimony places LaCaze, Defendant, and Willis at the crime scene. Regardless of who shot Mitchell, Defendant was at least a principal in the robbing and shooting. A principal is defined as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24. Under this theory, a person may be convicted of an offense even though he did not personally fire the fatal shot. *State v. Brooks*, 45,778 (La.App. 2 Cir. 3/2/11), 58 So.3d 506, *writ denied*, 11–631 (La.10/7/11), 71 So.3d 309.

*Pierre*, 170 So.3d at 153

It is not the court's role to second guess the jury's role as a fact-finder. Pierre clearly believes LaCaze was not a credible witness, but credibility determinations are within the province of the trier of fact. Therefore, a federal habeas court generally will not grant relief on a sufficiency claim grounded on issues of credibility. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *Picou v. Cain*, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007) ("[T]he crucial issue was which of

[the] witnesses was lying. . . .  The judge, as the trier of fact, was obviously the one in the best position to make that call, and it is a matter appropriately left to him.").

The state court's decision that sufficient evidence supports Pierre's conviction is not contrary to or an unreasonable application of *Jackson*.  Pierre is not entitled to relief on this claim.

### C.    There was no unreasonable application of federal law as to Pierre's ineffective assistance of counsel claims.

Pierre alleges that he received ineffective assistance of counsel under *Strickland* because his attorney failed to challenge "several jurors who possessed grave bias or potential for grave bias."  ECF No. 1-2 at 15.   Pierre's claim was fully adjudicated on the merits in the state courts on post-conviction review.

In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove both deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *See Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F .3d 438, 450 (5th Cir. 2001).  The

petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The analysis of counsel's performance must consider the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation

amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, like review under *Jackson*, scrutiny of counsel's performance under § 2254(d) is also "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (quoting *Knowles*, 556 U.S. at 121 n. 2) (citing *Strickland*, 466 U.S. at 689).

Pierre claims that his trial attorney was ineffective in failing to raise challenges to certain biased jurors. ECF No. 1-5 at 6. Pierre alleges that Alecia Sarpy, James Metoyer, Ricky Taylor, and Rosetta Johnson were biased because they knew the prosecuting attorneys, Ms. Sylvester and Mr. Seaman. ECF No. 1-5 at 8-9. He also alleges that Sylvia Hill was biased because she had been a victim of a crime. *Id.* at 7.

A juror is biased if his views would prevent or substantially impair the performance of his duties. *Wiley v. Grimmer*, 476 F. App'x 292, 294, 2012 WL 833310 (5th Cir. 2012) (citing *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000). If a juror is not biased, counsel's failure to challenge that juror does not support a claim for ineffective assistance of counsel. *Id.* (citing *Virgil v. Dretke*, 446 F.3d 598, 608–09 (5th Cir. 2006). Bias may be either actual or—in extraordinary circumstances— implied. *Andrews v. Collins*, 21 F.3d 612, 620 (5th Cir. 1994). To demonstrate actual bias, "admission or factual proof" of bias must be presented. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001), *cert. denied*, 535 U.S. 1016 (2002).

Pierre alleges that Ms. Hill was biased because she had been a victim of a violent crime in the past. Ms. Hill informed the judge that she was "hesitant" about serving on the jury and didn't really know if her experience would cause her to favor one side over the other. ECF No. 11-3 at 89.

| The Court: | And so, Ms. Hill, counsel came up and you came up. And you told us about something that has happened in your past. And what you described was a crime of violence. A different crime from this case but a crime of violence. |
| --- | --- |
| Ms. Hill: | Yes. |
| The Court: | And would that affect your ability to be a fair and impartial juror in this case? |
| Ms. Hill: | I think it would. |
| The Court: | Hold the mic up. |
| Ms. Hill: | I think it would. |
| The Court: | And why is that? |

| Ms. Hill: | Because when this happened to me, I… you know, I was between… in between both of the persons who it happened to. So, I wasn't, you know, really in the decision of what I should do and what I shouldn't do. I was just trying not to get… you know, them hurt. Trying not to see them get hurt. |
| --- | --- |
| The Court: | I understand. My question really, when I ask this question of whether you can be a fair and impartial juror in this case, okay? |
| Ms. Hill: | Uh, huh. |
| The Court: | I'm not talking about if it's comfortable for you. |
| Ms. Hill: | Uh, huh. |
| The Court: | I'm really not talking about if it makes you uneasy. What I need to know is whether or not whatever has happened in your past such as this incident you described will prevent you from being fair to both the defendant and the State, and not favoring one side or the other. |
| Ms. Hill: | That's what I'm… you know, that's what I'm saying. I'm still, you know, hesitant about it. |
| The Court: | And so why, would it cause you to favor one side or the other? |
| Ms. Hill: | (Inaudible). |
| The Court: | Ma'am? |
| Ms. Hill: | I said, I don't really know. |
| The Court: | I'm not trying to be difficult. |
| Ms. Hill: | I know. I know. |
| The Court: | Okay, well, thank you. All right, anyone else? |

ECF No. 11-3 at 88-89. Pierre's argument is based on these initial responses from

Ms. Hill. He claims that "the only conclusion that could be drawn from Ms. Hill was

that she would show bias toward the Petitioner."  ECF No. 1-5 at 8.  However, the

defense attorney later asked Ms. Hill additional questions:

| | |
|---|---|
| Mr. Methvin: | Ms. Hill, you had mentioned… and I don't want to go into detail about what you talked about, but this is going to be a violent crime that happened to the victim.  Uh, and is that going to sway you one way or the other when you have to hear the testimony of a violent act? |
| Ms. Hill: | No. |
| Mr. Methvin: | Do [sic] that make you uncomfortable? |
| Ms. Hill: | No. |
| Mr. Methvin: | It doesn't? |
| Ms. Hill: | It may be uncomfortable but, you know, I have to … you know, bear with it. |
| . . . | |
| Mr. Methvin: | And do you think that police officers can make a mistake and arrest the wrong person?  Even after their investigation? |
| Ms. Hill: | I would think… you know… everybody make mistakes. |
| Mr. Methvin: | Okay, you're able to evaluate the credibility just like everybody else? |
| Ms. Hill: | Yeah. |

ECF No. 13-4 at 22.  Pierre offers no evidence suggesting that Ms. Hill's responses to

the attorney were false.  She affirmatively stated that, despite her past experience in

an unrelated situation, she would not be swayed one way or the other and could

"evaluate the credibility just like everybody else."

Pierre alleges bias as to the other jurors because they knew the prosecutors.

Mr. Metoyer acknowledged that his family knew Ms. Sylvester's family.  ECF No. 11-

3 at 6.  Ms. Sarpy said that she knew Mr. Seaman as an attorney, but did not have a social relationship with him.  ECF No. 11-3 at 7.  She worked for Ms. Sylvester's brother at one time in a firm in which Ms. Sylvester was also employed.  *Id.*  Ms. Taylor knew Mr. Seaman as her divorce attorney 10 years prior.  ECF No. 11-3 at 9. Mr. Johnson indicated that he knew the defense attorney as well as the prosecutors since they are from a "small town."  ECF No. 11-3 at 71-72.   All of these jurors indicated that, despite knowing the attorneys, they could still be impartial in the case.  ECF No. 11-3 at 6-10, 71-72.  Again, Pierre offers no evidence suggesting that any of the jurors' answers indicating that they could be impartial were false.

Nor does Pierre present the type of evidence upon which bias may be presumed. *See Solis v. Cockrell*, 342 F.3d 392, 396-99 (5th Cir. 2003), *cert. denied,* 540 U.S. 1151 (2004) (discussing limited scenarios in which implied bias might exist and noting the "carefully watched limits" of the doctrine).  The limited connection of these jurors to the prosecution, about which they were entirely forthcoming, is not analogous to cases in which jurors purposefully concealed their close connection to law enforcement in order to serve on the jury, *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988); *United States v. Buckhalter*, 986 F.2d 875, 879 (5th Cir. 1993), or in which the prosecutor had clear power over the juror that could have influenced the juror's deliberation, *Brooks v. Dretke*, 444 F.3d 328, 332 (5th Cir. 2006).  *See Wiley v. Grimmer*, 476 F. App'x 292, 294, 2012 WL 833310 (5th Cir. 2012).

Because Pierre does not show bias, he cannot establish ineffective assistance of counsel in failing to challenge Ms. Hill, Ms. Sarpy, Mr. Metoyer, Mr. Taylor, or Ms. Johnson. *See Wiley*, 476 F. App'x at 294; *Virgil*, 446 F.3d 598, 608–09 (5th Cir. 2006).

Moreover, even if he could show bias as to Ms. Hill, the appellate court also found that Pierre could not establish that he was prejudiced as a result of his attorney's alleged failure to challenge Ms. Hill. ECF No. 10-3 at 3. The appellate court noted:

> Regarding Mr. Metoyer and Ms. Sarpy, the record of voir dire does not establish that their deliberations would be affected by their acquaintance with the prosecutors. *State v. Williams,* 00-1134 (La.App. 5 Cir. 3/28/01), 783 So.2d 566, and *State v. Alexander*, 612 So.2d 262 (La.App. 4 Cir. 1992). With respect to Ms. Hill, and notwithstanding Relator's argument that defense counsel's failure to object to her service on the jury was deficient performance, Relator did not meet his burden of establishing that he as prejudiced as a result. Accordingly, Relator's writ application is denied.

ECF No. 10-3 at 3.

In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). "A reasonable probability means a 'substantial,' not just 'conceivable,' likelihood of a different result." *Shinn v. Kayaer*, 141 S. Ct. 517, 523 (quoting *Cullen v. Pinholster*, 563 U.S. 170 (2011)). "The petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). Conclusory allegations of ineffective assistance of counsel, with no showing of effect

on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

LaCaze implicated Pierre, and his testimony was corroborated by other witnesses. The jury ultimately found him credible. And as discussed above, regardless of who shot the victim, Pierre was there and at least a principal in the robbery and shooting. Thus, he could be convicted even if he did not fire the shot. Pierre has offered nothing to show the outcome would have been different without Ms. Hill on the jury. Such an allegation is entirely conclusory.

Giving appropriate deference to the state court's factual findings, and having independently reviewed Petitioner's claim and the state court record, the state courts' application of *Strickland* was not unreasonable. *See* 28 U.S.C. § 2254(d), (e).

## III.   Conclusion

Because Pierre cannot establish his entitlement to relief, IT IS RECOMMENDED that his Petition (ECF No. 1) be DENIED and DISMISSED with prejudice.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

SIGNED on Friday, August 6, 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE